**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KOREY KINDELL,**

      **Plaintiff,**

**v.**                                **Case No. 8:20-cv-3119-MSS-CPT**

**JAMES M. WOLFF,** *et al.,*

      **Defendants.**

_____/

# O R D E R

Kindell sues Detective James Wolff, Detective Nicole Sackrider, Officer Leigh Mathisen, and Officer Charles Eason for federal civil rights violations. (Doc. 58) The Defendants move to dismiss Kindell's third amended complaint. (Doc. 63) Kindell files a response (Doc. 66) and five supplements (Docs. 67, 69, 72, 74, and 76), and submits documents in support of his response. (Doc. 68)[1] After reviewing the third amended complaint and the relevant documents, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion (Doc. 63) to dismiss.

## FACTS

Kindell's third amended complaint alleges the following facts. On October 26, 2018, around 10:00 P.M., the Defendants responded to the scene of a shooting. (Doc. 58 at 14) At the scene, the Defendants learned that Derrick Burts suffered a gunshot wound. (Doc. 58 at 14) Kindell alleges that he told the Defendants that he and Burts yelled at each other in the

---

[1] Also, Kindell moves for a ruling on the motion to dismiss (Docs. 75 and 77) and moves for appointment of counsel. (Doc. 62)

1

middle of the street during an argument, and he went inside, changed his clothes, and left before the shooting. (Doc. 58 at 14)

Kindell alleges that Eason arrested him without a warrant for aggravated battery with a deadly weapon. (Doc. 58 at 14–15) Kindell further alleges that Eason falsely stated in a report that Burts identified Kindell as the shooter and that a surveillance video depicted Kindell shoot Burts. (Doc. 58 at 14–15) He alleges that Mathisen falsely stated to Eason that Burts identified Kindell as the shooter. (Doc. 58 at 15–16) He alleges that, after interviewing a neighbor, Wolff falsely stated in a report that the neighbor described the shooter as a "black male in his thirties or forties with short hair, wearing a white shirt, black shorts, and white socks." (Doc. 58 at 16) Lastly, he alleges that Sackrider falsely stated in a report that Kindell was "positively identified via RMS photo." (Doc. 58 at 17)

Kindell alleges that police later learned that fingerprints on a firearm recovered from the scene did not match Kindell's fingerprints. (Doc. 58 at 14) A jury acquitted Kindell of aggravated battery with a firearm. (Doc. 58 at 14) However, Kindell was serving a probationary sentence when the shooting occurred, and a trial judge determined that Kindell violated conditions of his probation and sentenced him to five years in prison. (Doc. 58 at 14)

Kindell asserts that the Defendants violated his federal rights by falsely arresting him and fabricating evidence and demands $300,000.00 from each Defendant. (Doc. 58 at 5, 13) He attaches to his complaint police reports, an arrest affidavit, his booking photograph, trial testimony, deposition testimony, hearing transcripts, and a DNA report. (Doc. 58 at 19–65) He submits with his response to the Defendants' motion to dismiss additional documents related to the investigation of his criminal case. (Doc. 68)

## STANDARD OF REVIEW

Allegations in a *pro se* pleading are reviewed liberally. *Haines v. Kerner*, 404 U.S. 519, 596 (1972). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### Documents Submitted by Kindell

The Defendants assert that the Court may consider the documents attached to the third amended complaint when determining whether the complaint states a claim under Rule 12(b)(6), Federal Rules of Civil Procedure. (Doc. 63 at 5) Because a document attached to a pleading is part of the pleading, the Court will consider the documents attached to the complaint when reviewing the Defendants' motion to dismiss. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022) ("'In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference.'") (citation omitted).

Kindell submits additional documents related to the investigation of his criminal case in support of his response to the Defendants' motion to dismiss. (Doc. 68) Because those documents are not attached to Kindell's complaint, the Court will not consider those documents when reviewing the motion to dismiss. However, Kindell submits with the response the affidavit by Eason in support of Kindell's arrest for aggravated battery with a

deadly weapon. (Doc. 68 at 30) Because the arrest affidavit is central to Kindell's claims for false arrest and fabrication of evidence and the arrest affidavit is a public record that the Court may judicially notice, the Court will consider the affidavit when reviewing the Defendants' motion to dismiss. *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1341 (M.D. Fla. 2017) ("[A] court may take judicial notice of matters of public record, including arrest warrants, and consider those facts in resolving a motion to dismiss.") (citing *Brivik v. Law*, 545 F. App'x 804, 806 (11th Cir. 2013)[2]).

In the affidavit, Eason stated that the following facts to establish probable cause for Kindell's arrest (Doc. 68 at 30):

> On the above date and time, the victim and the defendant were observed via surveillance video standing in the [redacted] of [redacted]. Both parties were engaged in a verbal altercation when the defendant displayed a handgun and proceeded to shoot the victim in the lower abdomen one time. The victim then fled north from this location where he arrived at a nearby business and advised employees he was shot. The defendant fled in an unknown direction.

> The victim advised he and the defendant have resided at this residence for months and interact on a daily basis. The victim positively identified the defendant as the person who shot him via HCSO booking photograph.

> The offense was captured via surveillance video.

Because Kindell alleges that the police reports and arrest affidavit contain false statements by the Defendants (Doc. 58 at 14–17), the Court will not treat the statements in the documents as true. *Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023) ("When a document considered at the motion to dismiss stage contains 'ambiguities . . .

---

[2] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

subject to interpretation,' courts should interpret all ambiguities in the plaintiff's favor.")
(citation omitted).

**False Arrest — Mathisen and Eason**

In the complaint, Kindell contends that Mathisen and Eason falsely stated in police reports that the victim identified him as the shooter and that video surveillance depicted him as the shooter. (Doc. 58 at 14–16) He asserts that Eason relied on these false statements to manufacture probable cause for his arrest. (Doc. 58 at 14–16)

Mathisen and Eason assert that the following police report by Officer Joseph Aduddell, attached to the complaint, refutes these allegations (Doc. 58 at 36):

> On October 26, 2018, at approximately [12:38 A.M.], Officer Kuhn and I were riding as a two-man unit and we responded to Floribraska Avenue and Nebraska Avenue North in reference to an aggravated battery. . . . I was advised by multiple people that they heard a gunshot outside. I was directed to a camera system that was operable and attempted to locate any video of the incident. I then located video of the incident.
>
> Video: Timestamps
>
> 22:06:00 – Defendant exits residence.
> 22:08:00 – Victim exits residence.
> 22:08:30 – Aggravated battery occurs; victim falls to ground.
> 22:08:39 – Victim stands up and runs east.
> 22:09:25 – Defendant returns to residence.

Mathisen and Eason contend that the video recording depicts Kindell and the victim standing in the street, and the victim suddenly falling to the ground. (Doc. 63 at 7) The Defendants contend that the recording established probable cause for Kindell's arrest. (Doc. 63 at 7)

However, in the complaint, Kindell alleges that the video does not clearly depict the identity of the individual who shot the victim. (Doc. 58 at 15) He further alleges that "all of the other officers" presented false statements in reports to establish probable cause for his

arrest. (Doc. 58 at 14–16) Even though Kindell attached to his complaint the police report by Officer Aduddell summarizing the contents of the video, the Court must construe any ambiguity in the report in the light most favorable to Kindell. Consequently, the police report does not refute the claim. *Edwards*, 82 F.4th at 1311.

Mathisen and Eason further assert that deposition and trial testimony by the victim, attached to the complaint, refute the allegation that the victim did not identify Kindell as the shooter. (Doc. 63 at 8) However, in the excerpt of the deposition attached to the complaint, the victim testified that, before Kindell's arrest, he did NOT identify Kindell as the shooter (Doc. 58 at 64–65):

| | |
|---|---|
| [Trial counsel:] | All right. Now, when the police first spoke to you, were you still at the store or was that at the hospital? |
| [Victim:] | Both. |
| [Trial counsel:] | Okay. And at one point, did you tell the police that you did not know who shot you? |
| [Victim:] | Uh-huh. |
| [Trial counsel:] | That's a yes? |
| [Victim:] | Yes. |
| [Trial counsel:] | Alright. Why did you tell the police that? |
| [Victim:] | Because you don't tell in the street. |
| [Trial counsel:] | Okay. And at a later point, did you tell the police what happened? |
| [Victim:] | No. At a later point, the police told me that they had it on camera and they showed me a picture of it. |

[Trial counsel:]      And was that the video that was outside the boarding house?

[Victim:]      Well, they told me that they had the surveillance video. But they showed me a picture of his mug shot and said they know what happened. So — and then told me that they talked to that guy, Benjamin. You know what I'm saying? And that they knew everything.

So there's no reason for me to sit up there and just continue to lie. Like, you know what I'm saying? I told them, if you got your case, you got your case. Like just, you know, you can let me get well and I can go home.

Also, in the excerpt of the trial testimony attached to the complaint, the victim testified again that, before Kindell's arrest, he did NOT identify Kindell as the shooter (Doc. 58 at 52–53):

[Trial counsel:]      Mr. Burts, yes or no. Do you recall saying that you attempted to swing and hit Mr. Kindell? Referring to page 27 of the transcript.

[Victim:]      I don't recall. I don't recall.

[Trial counsel:]      Now, after you were shot, you ran across the street.

[Victim:]      Yes, ma'am.

[Trial counsel:]      And when you were outside, there were different people you saw outside.

[Victim:]      I really didn't see anybody at the moment. When I went to Checkers, I [saw] somebody I was talking to previously, a Caucasian guy, a friend of mine, and I just asked him to call 911.

| | |
|---|---|
| [Trial counsel:] | Okay. And some of the people outside assisted you by calling the police. |
| [Victim:] | Well, I didn't say call the police. I said call the ambulance. Yes. |
| [Trial counsel:] | Okay. But somebody called the police for you. |
| [Victim:] | The ambulance. |
| [Trial counsel:] | Now, while you were speaking to that male outside, he asked you who shot you. |
| [Victim:] | No. |
| [Trial counsel:] | Did you tell him that you didn't know who shot you? |
| [Victim:] | Yes. |
| [Trial counsel:] | Okay. Now, after the ambulance came, the police came as well. |
| [Victim:] | Yes. |
| [Trial counsel:] | And the police also asked you questions about who shot you. |
| [Victim:] | Yes. |
| [Trial counsel:] | And you also told the police you didn't know who shot you. |
| [Victim:] | Yes, I did say I didn't know who shot me. |

Because the transcripts do not demonstrate that the victim identified Kindell as the shooter, the transcripts do not refute Kindell's claim. *Edwards*, 82 F.4th at 1311.

**False Arrest — Sackrider**

In the complaint, Kindell asserts that Sackrider falsely stated in a report that "Kindell was 'positively identified via RMS photo.'" (Doc. 58 at 17) Kindell contends that the

8

surveillance video does not clearly depict the individual who shot the victim. (Doc. 58 at 17) The allegedly false statement appears in an arrest affidavit for a probation violation, signed by Sackrider and attached to the complaint (Doc. 58 at 38):

> The defendant was arrested for aggravated battery with a deadly weapon (*see* TPD #18-548984). This arrest was in direct violation of the defendant's probation which began on January 8, 2018 for false imprisonment (case #T96790) with an anticipated release date of January 4, 2021. The defendant [ ] also left the residence past his curfew of [10:00 P.M.], which he admitted post-*Miranda*.
>
> The defendant was positively identified via RMS photo.

Sackrider contends that, viewed in the context of the entire affidavit, the statement conveys that Sackrider viewed a photograph of Kindell to confirm that he was the individual who was serving the probationary sentence in the false imprisonment case. (Doc. 63 at 9) She contends that "RMS" refers to the Tampa Police Department's records management system. (Doc. 63 at 9) However, in a deposition, attached to the complaint, the victim testified that police showed him Kindell's "mug shot" and asked if Kindell was the shooter. (Doc. 58 at 65) Also, the arrest affidavit for aggravated battery states that "[t]he victim positively identified the defendant as the person who shot him via HSCO booking photograph." (Doc. 68 at 30) Construing the arrest affidavit signed by Sackrider in the light most favorable to Kindell, the statement refers to the victim's alleged identification of Kindell as the shooter before Kindell's arrest. Kindell alleges that Sackrider's statement is false. (Doc. 58 at 17) Transcripts attached to the complaint demonstrate that the victim did not identify Kindell as the shooter. (Doc. 58 at 52–53, 64–65) Consequently, the police report does not refute the claim. *Edwards*, 82 F.4th at 1311.

Sackrider further contends that a police report attached the complaint states that police went to the boarding house where Kindell lived after midnight on the night of the shooting and Kindell was not home. (Doc. 63 at 10) Sackrider contends that the police report demonstrates that Kindell was not home after midnight and that probable cause supported Kindell's arrest for violating a condition of probation by leaving his residence after curfew. (Doc. 63 at 10)[3]

The affidavit supporting Kindell's arrest for the probation violation states that "[Kindell] also left the residence past his curfew of [10:00 P.M.], which he admitted post-*Miranda*." (Doc. 58 at 38) In his complaint, Kindell alleges that "he told police that he and Burt's yelled at each other in the street during the argument, and he went inside to change his clothes and left." (Doc. 58 at 14) In a police report attached the complaint, Wolff stated that he arrived at the scene of the shooting at 10:02 P.M., spoke with Kindell's neighbor, identified Kindell as a suspect, and "circulated the area but [was] unable to find [Kindell]." (Doc. 58 at 27) Wolff further stated that he arrested Kindell at 12:52 A.M. after Kindell returned home. (Doc. 58 at 27)

In his report, Wolff did not state that, after 10:00 P.M., he went to Kindell's home and determined that he was not at home. Wolff instead stated that, after speaking with Kindell's neighbor, he "circulated the area but was unable to find [Kindell]." (Doc. 58 at 27) Even if a reasonable inference could be drawn from this ambiguous statement that Kindell was not

---

[3] Sackrider contends that a police report on page 36 of the third amended complaint states that "several police officers went to the boarding house after midnight on October 26, 2018, and [Kindell] was not present when they arrived." (Doc. 63 at 10) Page 36 of the third amended complaint consists of a police report by Officer Aduddell summarizing the surveillance video. (Doc. 58 at 36) The report does not state that police officers arrived at the boarding house after midnight and determined that Kindell was not present.

home and returned home at 12:52 A.M. when police arrested him, Kindell alleges that the police reports contain false statements and that police officers relied on those false statements to manufacture probable cause for his arrest. (Doc. 58 at 14–17) Also, none of the records attached to the complaint demonstrate that a condition of Kindell's probationary sentence prohibited Kindell from leaving his home after 10:00 P.M. A police report attached to the complaint states that Kindell lived at a boarding house (Doc. 58 at 39), and the boarding house could have imposed the curfew. Because the Court must construe any ambiguity in the police reports in the light most favorable to Kindell, Wolff's police report does not refute the claim. *Edwards*, 82 F.4th at 1311.

**False Arrest — Wolff**

In the complaint, Kindell asserts that Wolff falsely stated in a police report that a neighbor observed the shooting and described the "shooter" as a "black male in his thirties and forties with short hair wearing a white shirt, black short[s], and white socks." (Doc. 58 at 16) Kindell alleges that Wolff lied about the neighbor's statement in the police report because the neighbor later testified in a deposition that she did not observe the shooting. (Doc. 58 at 16) Kindell contends that police falsely arrested him based on the false statement about the neighbor's observation. (Doc. 58 at 16)

Wolff responds that Kindell fails to demonstrate how police relied on the neighbor's observation to establish probable cause for Kindell's arrest for aggravated battery. (Doc. 63 at 9) In the arrest affidavit, Eason did not rely on the neighbor's description of the shooter to establish Kindell's identity as the shooter and instead relied on the alleged victim's identification (Doc. 68 at 30):

> The victim advised he and the defendant have resided at this residence for months and interact on a daily basis. The victim positively identified the defendant as the person who shot him via HCSO booking photograph.
>
> The offense was captured via surveillance video.

Also, if the Court accepts the allegations in the complaint as true, the neighbor did not identify Kindell as the shooter and instead provided to police a description of the shooter. Kindell does not allege that he matched the neighbor's description of the shooter. Even if Wolff falsely stated in a police report that the neighbor provided the description, the complaint fails to allege facts that demonstrate that Eason relied on the allegedly false description to establish probable cause for Kindell's arrest. Consequently, Kindell fails to state a claim against Wolff.

**Fabrication of Evidence**

In each claim in the complaint, Kindell alleges that the Defendants fabricated evidence in police reports to establish probable cause for his warrantless arrest. (Doc. 58 at 14–17) The Defendants construe these allegations based on the fabrication of evidence as a malicious prosecution claim and assert that Kindell fails to state a claim. (Doc. 63 at 11–12) If the allegations in the *pro se* complaint are construed as a malicious prosecution claim, the Defendants are correct that Kindell fails to state a claim.

*Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citations omitted), explains the difference between a false arrest claim and a malicious prosecution claim:

> A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process. Malicious prosecution, in contrast, requires a seizure "pursuant to legal process." Of course, warrant-based seizures fall within this category. So do seizures following an arraignment, indictment, or probable-cause hearing. A Fourth Amendment violation involving these seizures occurs "when legal process itself goes

wrong — when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." In these situations, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement."

For malicious prosecution, a plaintiff must allege facts that demonstrate "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). Kindell does not allege that false statements by the defendants caused him to suffer a seizure pursuant to "legal process," such as pretrial detention after a probable cause determination by a judge. He instead alleges that the defendants falsely arrested him without a warrant and without probable cause based on fabricated statements. Consequently, the complaint fails to state a malicious prosecution claim. *See, e.g.*, *Eloy v. Guillot*, 289 F. App'x 339, 343 (11th Cir. 2008)[4].

Also, Kindell alleges that Sackrider falsely stated in a report that Kindell was "positively identified via RMS photo." (Doc. 58 at 17) This allegedly false statement appears in an affidavit for Kindell's arrest for violating a condition of his probation. (Doc. 58 at 38) Kindell alleges that a trial judge determined that he violated conditions of his probation and sentenced him to five years in prison. (Doc. 58 at 14) Because Kindell fails to allege that the probation violation proceeding terminated in his favor, a malicious prosecution claim against Sackrider fails. *Luke*, 975 F.3d at 1144.

---

[4] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

13

**Fourteenth Amendment Claims**

The Defendants also contend that Kindell incorrectly asserts that the Defendants violated the Fourteenth Amendment by unlawfully arresting him without probable cause. (Doc. 63 at 12–13) The Defendants assert that the Fourth Amendment applies to Kindell's claims. (Doc. 63 at 12–13) In his complaint, Kindell cites the Fourth Amendment right against an unreasonable search or seizure. (Doc. 58 at 3, 5, 13, 14, 15, 16, 17) Kindell does not raise a federal due process claim under the Fourteenth Amendment. Also, "the Fourteenth Amendment . . . incorporated the protections of the Fourth Amendment against the States." *Torres v. Madrid*, 592 U.S. 306, 314 (2021). Consequently, the Defendants' argument based on the Fourteenth Amendment fails.

Accordingly, the Defendants' motion (Doc. 63) to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Kindell's false arrest claim against Wolff and construed malicious prosecution claims are **DISMISSED** for failure to state a claim. Because the Court granted Kindell leave to amend his complaint three times (Docs. 6, 15, 25), the claims are dismissed **WITH PREJUDICE**. *Woldeab v. DeKalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). The Defendants' motion to dismiss (Doc. 63) all remaining counts is **DENIED**, and Kindell's motions (Doc. 75 and 77) for a ruling are **DENIED** as moot.

Also, Kindell moves (Doc. 62) for appointment of counsel. Because "'the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner,'" Kindell's motion (Doc. 62) is **GRANTED**. *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (citation omitted). This matter is referred to Judge Christopher Tuite for appointment of counsel. The Clerk is **DIRECTED** to **STAY** and **ADMINISTRATIVELY CLOSE** this case until Judge Tuite appoints counsel. No later than **30 DAYS** after the appointment of

counsel, the parties must conduct a planning conference and submit a case management

report. M.D. Fla. L.R. 3.02.

   **DONE AND ORDERED** in Tampa, Florida on March 21, 2024.


**MARCIA MORALES HOWARD** *
United States District Judge


Copies to:

Counsel of Record

Pro Se Parties


* Signed by Judge Marcia Morales Howard to expedite the resolution of this motion.  This case
remains assigned to Judge Mary S. Scriven.